# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

FRANK J. THACKER,

                    Petitioner,            :     Case No. 1:22-cv-572

    - vs -                            District Judge Jeffrey P. Hopkins
                                            Magistrate Judge Michael R. Merz

WARDEN, Noble Correctional
  Institution,

                                              :
                Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case was brought by Petitioner Frank Thacker pursuant to 28 U.S.C. § 2254 to obtain relief from his 2019 conviction in the Lawrence County Court of Common Pleas. The case is ripe for decision on the Amended Complaint (ECF No. 15), the State Court Record (ECF No. 20), the Warden's Return of Writ (ECF No. 21), and Petitioner's Response to the Return of Writ (ECF No. 27).

**Litigation History**

On May 23, 2018, a Lawrence County Grand Jury indicted Thacker on three counts of rape by use of force in violation of Ohio Revised Code § 2907.02(A), one count of kidnapping in violation of Ohio Revised Code § 2905.0l(A)(4)(1), and one count of abduction in violation of Ohio Revised Code § 2905 .02(A)(l )(B), all occurring December 22, 1999, with the same victim, a female whose

initials are A.S.[1] (Indictment, State Court Record, ECF No. 20, Ex. 1).  Thacker moved to dismiss the Indictment on speedy trial grounds which the trial court denied (State Court Record, ECF No. 20, Exs. 3, 5, and 6).  A jury found Thacker guilty of two counts of rape and on the kidnapping and abduction counts. *Id.* at Ex. 9. Thacker was sentenced to an aggregate term of imprisonment of thirty years to run consecutively to his twenty-seven year sentence in Lawrence County Common Pleas Court Case No.18-CR-59[2].

Thacker appealed to the Ohio Fourth District Court of Appeals pleading the following assignments of error:

> Appellant's convictions for rape, kidnapping, and abduction were against the manifest weight of the evidence.

> The trial court abused its discretion when it denied Appellant's Motion for a Dismissal of the indictment against him.

> A mistrial should have been declared due to misconduct of a juror for failing to disclose her relationship to the alleged victim of the case.

> Appellant's counsel was ineffective in his representation of the Appellant.

> Cumulative Errors committed during Appellant's trial deprived him of a fair trial and require a reversal of his convictions.

(Appellant's Brief, State Court Record 20, Ex. 14, PageID 163).  The conviction was affirmed. *State v. Thacker,* 2021-Ohio-2726 (Ohio App. 4th Dist. Aug. 5, 2021).  Thacker then appealed to the Ohio Supreme Court which declined to exercise jurisdiction.  *State v. Thacker,* 165 Ohio St.3d 1445 (2021).

---

[1] The victim's full name is given in the Indictment.  Her initials are used here to respect her privacy.

[2] Thacker also sought habeas corpus relief from that rape conviction in this Court's Case No. 1:21-cv-00704.  That case was dismissed December 9, 2022, and the Sixth Circuit dismissed Thacker's appeal March 17, 2023.

On November 1, 2021, Thacker filed an Application to Reopen his direct appeal, claiming ineffective assistance of appellate counsel in his attorney's failure to claim ineffective assistance of trial counsel for failure to investigate and raise an alibi defense (State Court Record, ECF No. 20, Ex. 21). The Fourth District denied the Application on the merits and Thacker did not appeal to the Supreme Court. *Id.* at Ex. 22.

On October 3, 2022, Thacker filed a second 26(B) application. *Id.* at Ex. 23. The Fourth District dismissed the application, however, because Ohio only allows one such application. *Id.* at Ex. 25.

Thacker then filed his habeas corpus application in this Court pleading the following grounds for relief:

> **Ground One**: Petitioner's convictions are against the sufficiency of the evidence, in violation of the Due Process Clause of the 14th Amendment.
>
> **Supporting Facts:** Complainant gave inconsistent testimony concerning the alleged assault. There were inconsistencies between Complainant and key witness testimonies-Neither witness could positively identify Petitioner in a photo lineup.
>
> **Ground Two**: Petitioner was deprived of his Sixth Amendment Right to an impartial jury due to juror misconduct.
>
> **Supporting Facts**: Juror 12 informed the Trial Court she knew Complainant shortly after the Jury was released for deliberations. She had participated in initial jury deliberations and had expressed an opinion about the case. Juror 12 was dismissed and replaced with an alternate. The Trial Court separated and interviewed each juror and determined Juror 12 had not provided additional evidence and did no[t] affect the jury's feelings. The Trial Court denied, twice, the Motion for Mistrial.
>
> **Ground Three**: Petitioner was denied his right to a Speedy Trial in violation of both the Speedy Trial Act and the 6th Amendment.
>
> **Supporting Facts:** The alleged crimes occurred in December of 1999 but Petitioner was not indicted and arrested until May of 2018.

**Ground Four**: Defense Counsel was ineffective, denying Petitioner of his rights under the 4th, 5th, 6th, and 14th Amendments.

**Supporting Facts:** Trial Counsel failed to bring to the Trial Court's attention that he had a client with 3 felony indictments in the past, from which DNA was collected and failed to object to improper and inflammatory questioning and statements by the prosecutor.

(ECF No. 1).

Before the Warden had answered, Thacker filed an Amended Complaint (ECF No. 15) which pleads the following grounds for relief:

**Ground One**: The evidence was insufficient to uphold Appellant's conviction of rape, kidnapping, and abduction and the convictions were against the manifest weight of the evidence.

**Ground Two**: The Trial Court abused its discretion when it denied Petitioner's Motion to Dismiss the indictment.

**Ground Three**: A mistrial should have been declared due to a juror failing to disclose their relationship to Complainant.

**Ground Four**: Petitioner received the ineffective assistance of trial counsel.

i. Trial Counsel failed to present an expert witness to contradict State's medical "expert" and failed to challenge State's medical "expert' regarding "hymen" testimony during cross-examination.

ii. Trial Counsel failed to introduce photos of Appellant or his vehicle in order to directly contradict the claims of Complainant.

iii. Trial Counsel failed to investigate and examine each juror about the deliberations and what effect the dismissed juror may have actually played. (sic)

**Ground Five**: The State did not comply with Criminal Rule 16(K) as it pertains to the State's "expert" witnesses; the Trial Court erred by allowing them to be qualified as "experts"; and Trial Counsel was ineffective for not objecting to their admission as "experts".

**Ground Six**: The State's DNA evidence was inadmissible due to chain of custody issues. Further, it was not subjected to competent adversarial testing by Trial Counsel.

**Ground Seven**: Appellant was denied due process by the repeated and persistent acts of prosecutorial misconduct by the State.

**Ground Eight**: Appellant was deprived of a fair trial when he appeared before the jury after being denied basic necessities, such as a shower and shave, until after *voir dire*.

**Ground Nine**: The cumulative errors committed during Petitioner's trial deprived him of a fair trial and require a reversal of the convictions.

*Id.*


# Analysis


## Ground One: Sufficiency and Weight of the Evidence


In both the original Petition and Amended Complaint, Thacker makes the claim that the evidence was insufficient to convict him; in the Amended Complaint he adds a claim that his conviction is against the manifest weight of the evidence. Respondent concedes this claim is not procedurally defaulted, but asserts it is without merit.

Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). A weight of the evidence claim is not a federal constitutional claim. *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986). Any claim in the two pleadings that the conviction is against the manifest weight of

the evidence should be dismissed for failure to state a claim cognizable in habeas corpus.

An allegation that a verdict was entered upon insufficient evidence, on the other hand, does state a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.* A sufficiency challenge should be assessed against the elements of the crime, not against the elements set forth in an erroneous jury instruction. *Musacchio v. United States*, 577 U.S. 237 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to

6

> convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard,* 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was

'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam). The federal courts do not make credibility determinations in reviewing sufficiency of the evidence claims. *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

Thacker's first assignment of error on direct appeal was that his conviction was against the manifest weight of the evidence. The Fourth District decided this assignment on the merits, holding:

> {¶21} In determining whether a criminal conviction is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119. *State v. Phillips*, 4th Dist. Scioto No. 18CA3832, 2018-Ohio-5432, ¶ 23.

> {¶22} To satisfy its burden of proof, the state must present enough substantial credible evidence to allow the trier of fact to conclude that the state had proven all the essential elements of the offense beyond a reasonable doubt. See *State v. Adams*, 2016-Ohio-7772, 84 N.E.3d 155, ¶ 22 (4th Dist.), citing *State v. Eley*, 56 Ohio St.2d 169, 383 N.E.2d 132 (1978), syllabus (superseded by state constitutional amendment on other grounds in *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997)). However, it is the role of the jury to determine the weight and credibility of evidence. See *State v. Kirkland,* 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 132. " 'A jury, sitting as the trier of fact, is free to believe all, part or none of the testimony of any witness who appears before it.' " *State v. Reyes-Rosales*, 4th Dist. Adams No. 15CA1010, 2016-Ohio-3338, ¶ 17, quoting *State v. West,* 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23. We defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility. *Id.; State v. Koon*, 4th Dist. Hocking No. 15CA17, 2016-Ohio-416, ¶ 18.

2. Evidence of Rape, Abduction, and Kidnapping

{¶23} Thacker contends that his convictions for rape, abduction, and kidnapping were unsupported by the evidence because A.S. initially testified that Thacker "never inserted his penis at any point during the assault against her." He argues that it was not until the state elicited testimony on redirect examination that A.S. testified that penetration occurred. Thacker also argues that there was not sufficient evidence that Thacker abducted or kidnapped A.S. because A.S. and Cornette gave inconsistent testimony about the color of the vehicle involved and could not positively identify him in the photographic lineup. He contends that the sole link between him and the crime was the CODIS DNA match, which occurred 18 years after the crime.

{¶24} Thacker was convicted of rape under R.C. 2907.02(A)(2), which states, "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Sexual conduct is defined in R.C. 2907.01(A) as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." Thacker challenges the penetration element of his rape convictions.

{¶25} A.S. testified that she was fully undressed and Thacker led her over to the metal cylinder and "bent me over and proceeded to try to put his penis in me any way that he could, vaginally and rec ... rectally." A.S. testified that Thacker complained that A.S. was dry and that it was not working the way he wanted it to. On cross-examination A.S. testified that it seemed like Thacker was having difficulty with an erection:

> A. * * *And whenever he was actually trying to penetrate me, he was making comments about it. His inability to, you know, perform or get erect.
>
> Q. But you didn't feel it erect?
>
> A. I felt the pressure of him trying to force himself into me, but it was really cold and I was in shock and I went numb.

{¶26} On redirect examination, the state asked:

Q. * * * whether his penis was erect or not, he inserted it into you?"
A. Yes.
Q. And you testified both into your vagina and in your rectum?
A. Yes.
Q. And, you'd never had sex before. You didn't have any idea what that would've felt like ...
A. No.
Q. ... at that point?
Q. Um, No doubt that that happened that night to you?
A. No, no doubt in my mind.
Q. Pretty traumatic event?
A. Very!

{¶27} A.S.'s testimony established the element of penetration when she testified that Thacker put his penis into her vagina and rectum. Apart from A.S.'s testimony, the jury heard additional witness testimony that established penetration of both the vagina and rectum through circumstantial evidence. The treating physician who examined A.S. immediately following the assault testified that A.S. had a tear in the hymen as a result of the sexual assault and that vaginal penetration was necessary for the hymen to tear. The treating nurse testified that she took swabs from both A.S.'s vagina and rectum and turned them over to law enforcement; Ms. Kennedy and Ms. Jimenez, the DNA experts with BCI, testified that these swabs contained sperm that exactly matched Thacker's DNA.

{¶28} The jury considered the state's witnesses' testimony and DNA evidence and found them credible. " '[A] conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony.' " *State v. Fletcher,* 4th Dist. Lawrence No. 14CA14, 2015–Ohio–1624, ¶ 28, quoting *State v. Cooper,* 170 Ohio App.3d 418, 2007–Ohio–1186, 867 N.E.2d 493, ¶ 17 (4th Dist.); *State v. Fox*, 4th Dist. Washington No. 14CA36, 2015-Ohio-3892, ¶ 26.

{¶29} Thacker's abduction conviction under R.C. 2905.02(A)(1) and (B) required the state to show the following elements: "(A) No person, without privilege to do so, shall knowingly do any of the following: (1) By force or threat, remove another from the place where the other person is found; * * * (B) No person, with a sexual motivation, shall violate division (A) of this section." And, the kidnapping conviction under R.C. 2905.01(A)(4) required the showing of the following: "(A) No person, by force, threat, or

10

deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: * * * (4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will." Thacker challenges the jury's finding that he was the person who abducted and kidnapped A.S.

{¶30} Both A.S. and Cornette testified that a male driving a light, white or tan SUV-type of vehicle approached them and offered to give them a ride. He eventually chased them, grabbing A.S., forcing her into the vehicle, and driving away with her. A.S. testified about the abduction, kidnapping, and subsequent rapes and the attempt to force her to perform oral sex during transport. Both A.S. and Cornette described the man as white, with brown receding hair. Though A.S. was unable to positively identify Thacker 19 years later, Cornette identified Thacker's photograph out of the lineup as looking most like the assailant, though she stated she could not be 100 percent certain. Cornette also described the vehicle as a Jeep Cherokee. Thacker's daughter confirmed that Thacker lived in the vicinity of the offenses and that he owned a light, champagne colored, silvery-gold Jeep Cherokee. A.S. testified that the same man who abducted her and drove her to a remote location was the same man who raped her at the remote location. Thacker's sperm was present inside A.S.'s vagina and rectum. Because the state proved that Thacker raped A.S., circumstantial evidence proved that Thacker was also the man who abducted and kidnapped A.S. There was no evidence presented that more than one assailant was involved in the crimes or that after some unknown male abducted and kidnapped A.S., Thacker suddenly appeared at the remote location and raped her.

{¶31} Thacker argues that there were "significant inconsistencies" in A.S.'s and Cornette's testimony "regarding the color of the vehicle in question." However, the record contains no inconsistencies. Both women testified that the vehicle was an SUV-type, with Cornette more specifically testifying that it was a Jeep Cherokee. Additionally, both women testified that it was light in color, either white, tan or light brown. According to the vehicle records, Thacker's vehicle was a "taupe" Jeep Cherokee. Thacker's daughter described it as a "champagne color" and "a very, very light, like, silvery gold color." The crimes occurred at night and the witnesses' descriptions of the color of the vehicle were consistently within the light-brown spectrum of colors. Each witness described an SUV-type of vehicle in a light shade of brown. Though 19 years

after the event, neither woman could positively identify Thacker's photograph from the lineup, their testimony describing the assailant matched Thacker.

{¶32} Reviewing the record, we cannot say that this is an exceptional case where the evidence weighs heavily against the convictions, that the trier of fact lost its way, or that a manifest miscarriage of justice has occurred. Accordingly, the verdicts were not against the manifest weight of the evidence. Thacker's first assignment of error is overruled.

*State v. Thacker, supra.* A decision that a conviction is not against the manifest weight of the evidence necessarily implies a decision that there is sufficient evidence. *Nash v. Eberlin,* 258 Fed. Appx. 761, 2007 U.S. App. LEXIS 29645 (6th Cir. Dec. 14, 2007); *Ross v. Miller*, No. 1:10-cv-1185, 2011 U.S. Dist. LEXIS 65082 (N.D. Ohio May 10, 2011)(White, M.J.); *Hughes v. Warden,* No. 1:10-cv-091, 2011 U.S. Dist. LEXIS 54131 (S.D. Ohio Apr. 27, 2011)(Merz, M.J.).

The Fourth District's decision here is neither contrary to nor an objectively unreasonable application of *Jackson*, nor is it an unreasonable determination of the facts in light of the evidence. Thacker's sufficiency of the evidence claim should be dismissed with prejudice.

## Juror Misconduct: Ground Two (Original Petition) and Ground Three (Amended Complaint)

Thacker complains next that he was denied an impartial jury because one of the deliberating jurors failed to disclose her relationship with A.S. Thacker presented this claim as his Third Assignment of Error and the Fourth District decided it as follows:

{¶44} Thacker contends that the trial court erred in failing to declare a mistrial when a juror failed during voir dire to disclose her relationship with the victim in the case.

{¶45} Juror Twelve informed the trial court that she knew A.S., but because she was unfamiliar with A.S.'s maiden name and did not easily recognize her, Juror Twelve did not realize she knew her until

the end of the trial. Juror Twelve testified that she had very limited interaction with A.S. years ago and did not know her on a personal level but through a relationship she had with A.S.'s cousin and with A.S.'s ex-boyfriend. Juror Twelve testified that she could still be fair and impartial in weighing the evidence, and she had no negative feelings towards A.S. Juror Twelve stated that she had participated in some initial jury deliberations and had expressed an opinion about the case. With the agreement of the state and defense counsel, the trial court excused Juror Twelve and substituted an alternate juror. Thacker moved for a mistrial. The trial court separated and individually questioned each of the remaining jurors and determined that Juror Twelve had not provided additional evidence and had not done anything or said anything that affected the remaining jurors' ability to be fair and impartial. The trial court denied Thacker's motion for mistrial.

1. Standard of Review

{¶46} Trial courts are entitled to wide latitude when considering motions for mistrial. *State v. Gunnell*, 132 Ohio St.3d 442, 2012-Ohio-3236, 973 N.E.2d 243, ¶ 28. "A mistrial should not be ordered in a cause simply because some error has intervened. The error must prejudicially affect the merits of the case and the substantial rights of one or both of the parties." *Tingue v. State*, 90 Ohio St. 368 (1914), paragraph three of the syllabus. We review a trial court's grant or denial of a motion for mistrial for abuse of discretion, because the trial court is best situated to determine whether a mistrial is necessary. The phrase "abuse of discretion" implies that the court's decision was unreasonable, arbitrary, or unconscionable. *State v. Kulchar*, 4th Dist. Athens No. 10CA6, 2015-Ohio-3703, ¶ 38.

2. Legal Analysis of Juror's Relationship with Victim

{¶47} Thacker acknowledges that the trial court conducted an individual voir dire of each of the remaining jurors and they all stated that Juror Twelve had not done or said anything that could influence or affect their abilities to continue to deliberate and to be fair and impartial. However, he speculates that the jurors were prejudiced even though they each stated that they were not.

{¶48} To obtain a new trial, Thacker must demonstrate that Juror Twelve failed to honestly answer a material question on voir dire and that he was prejudiced by her presence on the jury. To prove prejudice, Thacker must show that had Juror Twelve stated that she knew A.S., he would have had a valid for-cause challenge.

13

To obtain a new trial in a case in which a juror has not disclosed information during voir dire, the moving party must first demonstrate that a juror failed to answer honestly a material question on voir dire and that the moving party was prejudiced by the presence on the trial jury of a juror who failed to disclose material information. To demonstrate prejudice, the moving party must show that an accurate response from the juror would have provided a valid basis for a for-cause challenge.

In determining whether a juror failed to answer honestly a material question on voir dire and whether that nondisclosure provided a basis for a for-cause challenge, an appellate court may not substitute its judgment for the trial court's judgment unless it appears that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Grundy v. Dhillon,* 120 Ohio St.3d 415, 2008-Ohio-6324, 900 N.E.2d 153, paragraphs one and two of the syllabus.

{¶49} Juror Twelve testified that she did not realize she knew the victim when she was initially questioned about it during voir dire because she did not know the victim by her maiden name. There was no evidence that Juror Twelve intentionally misled the trial court and counsel or falsified her answer during the initial voir dire.

> However, a finding of juror misconduct does not necessarily require an explicit finding of dishonesty when a juror fails to answer a material question. * * * "[i]f a juror remains mute when [s]he should answer, the effect of h[er] silence is the same as a false answer." Thus, a finding that a juror failed to respond to a material question, whether deliberately or through inadvertence, may have the same effect as a finding that a juror failed to answer honestly. (Citations omitted.) (Brackets sic.)

*State v. Roper*, 9th Dist. Summit No. 29466, 2021-Ohio-188, ¶ 27.

{¶50} Even though Juror Twelve admitted that she failed to accurately answer the question about whether she knew A.S., Thacker cannot show prejudice because he must show that he was prejudiced by her "presence on the trial jury." By agreement of defense counsel and the state, Juror Twelve was removed and an alternate substituted in her place. Thus, Juror Twelve was not present on the trial jury that rendered a verdict against him.

{¶51} Even assuming Juror Twelve had, however momentary, a "presence on the trial jury," Thacker has failed to show prejudice because to "demonstrate prejudice, the moving party must show that

an accurate response from the juror would have provided a valid basis for a for-cause challenge." *Dhillon* at paragraph one of the syllabus. Here, Juror Twelve was asked twice, including once by defense counsel, whether she could be fair in deciding the case and both times she responded that she could. Such responses would cut against any basis for a for-cause challenge to Juror Twelve. *Dhillon* at ¶ 52, citing *State v. Jones*, 91 Ohio St.3d 335, 338, 744 N.E.2d 1163 (2001) ("The trial court was entitled to accept McCollum's assurances that he would be fair and impartial and that he would decide the case on the basis of the evidence"). "As long as a trial court is satisfied that the juror can be fair and impartial and follow the law as instructed, the court need not remove that juror for cause." *Id.*

{¶52} Thacker's assertion that the jury was biased because Juror Twelve expressed her opinion about the case during the early stages of deliberation is unsupported by the record and is pure speculation. Each juror testified that Juror Twelve did not do or say anything that would prevent them from being fair and impartial and there is no basis in the record to question their testimony. After careful consideration of the record, we find nothing unreasonable, arbitrary, or unconscionable about the trial court's denial of Thacker's motion for a mistrial.

*State v. Thacker, supra.* Thacker has not shown or even argued that this decision is contrary to or an objectively unreasonable application of Supreme Court precedent. Nothing about Juror No. 12's "relationship" with A.S. was likely to have caused her to be prejudiced against Thacker and all the other jurors testified she had had no impact on their decisionmaking before she was replaced by an alternate. Thacker's claim that he was denied an impartial jury because of juror misconduct is without merit and should be dismissed.

**Denial of a Speedy Trial (Ground Three of Original Petition)**

Thacker claims he was denied his Sixth Amendment right to a speedy trial when the offenses occurred in December 1999 but he was not arrested and indicted until May, 2018. He

presented his speedy trial claim on direct appeal as assignment of error two and the Fourth District

decided it as follows:

{¶33} Thacker contends that the trial court abused its discretion when it denied his motion to dismiss the indictment on speedy trial grounds. The crimes occurred in December 1999 but he was not indicted and arrested until May 2018. He asserts that the state had unjustifiably delayed the prosecution due to failure to properly investigate. Thacker contends that he was prejudiced by the delay because many years had passed causing all persons involved to lose the sharpness of memory. Witnesses who might have provided alibi testimony and other information of assistance to his defense have been lost due to the passage of time. He also contends that he was indicted on felony charges in 2001, 2002, and 2006 but the state failed to obtain DNA samples from him then or failed to properly enter them into CODIS.

{¶34} The state opposed the motion arguing that Thacker's vague contention that memories fade over time was insufficient to establish actual prejudice. The state also argues that the statute that requires the state to collect a DNA specimen for felony arrests was not applicable to Thacker's prior felony arrests in 2001 through 2006 because it was enacted later and applied to felonies committed on or after July 1, 2011.

1. Standard of Review

{¶35} "Decisions to grant or deny a motion to dismiss on grounds of preindictment delay are reviewed for an abuse of discretion." *State v. Darmond,* 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 33. "Appellate review of a trial court's decision on a motion to dismiss for a speedy trial violation involves a mixed question of law and fact. Generally, an appellate court will defer to a trial court's factual findings if competent and credible evidence supports those findings. However, an appellate court will review de novo a trial court's application of the law to those facts." (Citations omitted.) *State v. Phillips*, 2018-Ohio-1794, 111 N.E.3d 351, ¶ 9 (4th Dist.).

3. Legal Analysis of Speedy Trial Rights

{¶36} In his motion to the trial court, Thacker raised both constitutional and statutory speedy trial claims but failed to argue any statutory speedy trial violation. On appeal, he has abandoned any claim of a statutory speedy trial violation. Rather, he claims that he was not indicted or arrested until May 2018 and his constitutional

16

right to a speedy trial was violated by a preindictment delay in the commencement of the charges against him. The offenses occurred in December 1999, and he was not indicted until May 2018.

{¶37} A criminal defendant has a right to a speedy trial under the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution. "The Due Process Clause of the Fifth Amendment provides limited protection against preindictment delay." *State v. Adams,* 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 97, citing *United States v. Lovasco*, 431 U.S. 783, 789–790, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). These rights afford no protection to those who have not yet been accused unless preindictment delay has caused actual prejudice to the defendant:

> The Sixth Amendment to the United States Constitution guarantees the accused in a criminal prosecution "the right to a speedy and public trial." But on its face, the Sixth Amendment provides no protection to those who have not yet been accused; it does not "require the Government to discover, investigate, and accuse any person within any particular period of time." *United States v. Marion,* 404 U.S. 307, 313, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Statutes of limitations provide the ultimate time limit within which the government must prosecute a defendant—a definite point "beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced." *Id.* at 322, 92 S.Ct. 455. *See also United States v. Lovasco,* 431 U.S. 783, 789, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977) (stating that statutes of limitations provide predictable limits to prevent initiation of overly stale charges). But when unjustifiable preindictment delay causes actual prejudice to a defendant's right to a fair trial despite the state's initiation of prosecution within the statutorily defined limitations period, the Due Process Clause affords the defendant additional protection. *Id.*

> This court has stated succinctly that preindictment delay violates due process only when it is unjustifiable and causes actual prejudice: "An unjustifiable delay between the commission of an offense and a defendant's indictment therefor, which results in actual prejudice to the defendant, is a violation of the right to due process of law" under the United States and Ohio Constitutions. *State v. Luck,* 15 Ohio St.3d 150, 472 N.E.2d 1097 (1984), paragraph two of the syllabus.

> And we have firmly established a burden-shifting framework for analyzing a due-process claim based on preindictment delay. Once a defendant presents evidence of actual prejudice, the burden shifts to the state to produce evidence of a justifiable reason for the delay. *State v. Whiting,* 84 Ohio St.3d 215, 217, 702 N.E.2d 1199 (1998); *State v. Adams,* 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 99.

*State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 11-13.

{¶38} In *Jones*, the defendant was indicted for rape and kidnapping one day before the expiration of the 20–year statute of limitations. The trial court dismissed the charges based on preindictment delay and the Eighth District Court of Appeals affirmed. The Supreme Court of Ohio reversed and remanded the case on the ground that the appellate court applied an incorrect analysis of preindictment delay:

> As to the appropriate test and the shifting burden of proof that applies to a claim of preindictment delay, the dissent got it right. It aptly noted that unjustifiable delay does not violate due process unless it results in actual prejudice. *Id.* at ¶ 51 (S. Gallagher, J., dissenting), citing *Luck,* 15 Ohio St.3d 150, 472 N.E.2d 1097, at paragraph two of the syllabus. Accordingly, the dissent reasoned, because Jones failed to carry his burden of establishing actual prejudice, the state had no obligation to present evidence justifying the delay in this case, *see Adams,* 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, at ¶ 107 (denying relief on claim of unconstitutional preindictment delay without considering reasons for delay when defendant failed to establish prejudice).

*Id.* at ¶ 16 ("By considering the reasons for the state's delay before independently determining whether Jones established actual prejudice because of that delay, the Eighth District majority erred").

{¶39} The Court in *Jones* further explained that a finding of actual prejudice "involves ' "a delicate judgment" ' and a case-by-case consideration of the particular circumstances." *Id.* at ¶ 20, quoting *State v. Walls,* 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 52, quoting *United States v. Marion,* 404 U.S. at 325, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). "[S]peculative prejudice does not satisfy the

defendant's burden." *Id. "*The '*possibility* that memories will fade, witnesses will become inaccessible, or evidence will be lost is not sufficient to establish actual prejudice.' " (Emphasis sic.) *Id.* at ¶ 21, quoting *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 105.

> Those are "the real possibilit[ies] of prejudice inherent in any extended delay," and statutes of limitations sufficiently protect against them. That does not mean, however, that demonstrably faded memories and actually unavailable witnesses or lost evidence cannot satisfy the actual-prejudice requirement.

*Id.* "Each time this court has considered preindictment delay, we have scrutinized the claim of prejudice vis-à-vis the particular evidence that was lost or unavailable as a result of the delay and, in particular, considered the relevance of the lost evidence and its purported effect on the defense." *Id.* at ¶ 23. "Unlike a Sixth Amendment speedy-trial claim, no presumption of prejudice arises in the due-process context when a preindictment delay exceeds a particular length of time." *State v. Adams,* 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 98. A reviewing court must scrutinize a defendant's claim of prejudice by "consider[ing] the evidence as it exists when the indictment is filed and the prejudice the defendant will suffer at trial due to the delay." *Jones* at ¶ 20; *State v. Moore*, 2017-Ohio-1307, 88 N.E.3d 593, ¶ 25 (2d Dist.).

{¶40} Thacker argued in his motion that he was prejudiced because "the fact that many years have passed since this event will cause all person's [sic] involved, including the Defendant, to lose the sharpness of memory and recollection of events." He also argued that "witnesses who could account for activities" and "other information * * * has been lost either through the passage of time, by relocating to another residence or possibly the death of a material witness." On appeal, Thacker argues he was prejudiced because, "the lead detective on the initial investigation had died during the 18 years which followed the alleged assault" and Thacker was "unable to present any hope of an alibi defense as a result of the delay" and "fading memories of all witnesses significantly impacted" his ability to defend himself.

{¶41} Thacker makes broad, speculative claims that witnesses' memories have faded and an investigator and "possibly" other witnesses have died. "But the possibility that memories will fade, witnesses will become inaccessible, or evidence will be lost is not

19

sufficient to establish actual prejudice." *Adams* at ¶ 105; *State v. Lewis*, 4th Dist. Athens No. 00CA10, 2001-Ohio-2496 (the mere allegation of faded memory does not rise to the particularized demonstration of prejudice necessary to constitute an unconstitutional pre-accusation delay; defendant must provide concrete proof that he will suffer actual prejudice at trial as a result of the government's delay in indicting the defendant). And, although he claims that an investigator died, he failed to identify what exculpatory testimony the investigator might have offered and thus has not established actual prejudice. "The death of a potential witness during the preindictment period can constitute prejudice, but only if the defendant can identify exculpatory evidence that was lost and show that the exculpatory evidence could not be obtained by other means." *Adams* at ¶ 103.

{¶42} Because Thacker fails to meet his burden to show actual prejudice, it is unnecessary for us to consider the reasons for the preindictment delay, such as whether the state had a statutory duty to obtain Thacker's DNA during his prior felony arrests in 2001, 2002, and 2006. *Adams* at ¶ 107; *Jones* at ¶ 16; *see also State v. Miller*, 8th Dist. Cuyahoga No. 109543, 2021-Ohio-1878, ¶ 35 (involving a 17-year "cold case" delay in bringing rape charges, appellate court found that trial court abused its discretion in dismissing case, where defendant failed to show actual prejudice, "the burden-shifting analysis set forth by the Ohio Supreme Court in *Jones* made clear that, before courts review whether the state's delay was unjustifiable, the defendant must present evidence of actual prejudice. Miller did not identify any missing or unavailable evidence, * * * that would cut into the state's case and bolster his own.").

{¶43} The trial court did not abuse its discretion when it denied Thacker's motion to dismiss. We overrule Thacker's second assignment of error.

*State v. Thacker, supra.*

The Speedy Trial Clause of the Sixth Amendment is binding on the States through the Due Process Clause of the Fourteenth Amendment. *Klopfer v. North Carolina,* 386 U.S. 213 (1967). The Supreme Court has developed a four-part balancing test to use in determining whether a defendant's right to a speedy trial has been violated: (1) the length of the delay; (2) the reasons for the delay; (3) whether the defendant has asserted his right; and (4) prejudice to the defendant.

*Barker v. Wingo,* 407 U.S. 514, 530-32 (1972). Delay is presumptively prejudicial where the post-accusation delay approaches one year. *Doggett v. United States*, 505 U.S. 647 (1992).

The State proceeded promptly once Thacker's DNA had been identified as a match with the sample from the crime in suit. Furthermore he showed no prejudice from the delay. Thacker has not shown or even argued that the Fourth District's decision is contrary to or an unreasonable application of *Barker*. His speedy trial claim should be dismissed with prejudice.

**Ineffective Assistance of Trial Counsel**

In his Fourth Ground for Relief in the original Petition, Thacker claims he received ineffective assistance of trial counsel when (1) his trial attorney failed to raise the fact that he had not been identified earlier despite three prior felony arrests and (2) failed to object to inflammatory questioning and statements by the prosecutor. In Ground Four of the Amended Complaint, he adds three more sub-claims that his trial attorney provided ineffective assistance of trial counsel when he (3) failed to contradict State's medical "expert" and failed to challenge State's medical "expert' regarding "hymen" testimony during cross-examination; (4) failed to introduce photos of Appellant or his vehicle in order to directly contradict the claims of Complainant; and (5) failed to investigate and examine each juror about the deliberations and what effect the dismissed juror may have actually had.

Thacker presented his claim of ineffective assistance of trial counsel as his fourth assignment of error on direct appeal and the Fourth District decided it as follows:

> {¶54} Thacker contends that his conviction should be reversed
> based on ineffective assistance of counsel. Specifically, he argues
> that his trial counsel: (1) failed to bring to the trial court's attention
> that he had three felony indictments between 2001 and 2006 for

which his DNA sample should have been obtained; and (2) failed to object to leading questioning about the penetration element of the rape offenses.

{¶55} To establish constitutionally ineffective assistance of counsel, a criminal defendant must show (1) that his or her counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived him or her of a fair trial. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Accord State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Goff,* 82 Ohio St.3d 123, 139, 694 N.E.2d 916 (1998). "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Conway,* 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95. "Failure to establish either element is fatal to the claim." *State v. Jones,* 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14.

{¶56} When considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland* at 689, 104 S.Ct. 2052. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Quotation omitted.) *Id.* "A properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Taylor,* 4th Dist. Washington No. 07CA11, 2008-Ohio-482, ¶ 10, citing *State v. Smith,* 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment. *State v. Gondor,* 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 61.

{¶57} "Furthermore, courts may not simply assume the existence of prejudice, but must require that prejudice be affirmatively demonstrated." *State v. Walters,* 4th Dist. Washington Nos. 13CA33, 13CA36, 2014-Ohio-4966, ¶ 24*; State v. Jones,* 2018-Ohio-239, 104 N.E.3d 34, ¶ 21-24 (4th Dist.). We have repeatedly recognized that speculation is insufficient to establish the prejudice component of an ineffective assistance of counsel claim. *E.g., State v. Dailey,* 4th Dist. Adams No. 18CA1059, 2018-Ohio-4315, ¶ 33 and cases cited therein.

### 1.   Failure to Bring Forward his Three Prior Felony Arrests

{¶58} Thacker argues that his trial counsel was deficient for failing to bring his prior felony arrests, which he contends occurred in 2001, 2002, and 2006, to the trial court's attention to support his motion to dismiss on speedy trial grounds. He argues that the state should have obtained his DNA back then, matched it with the December 1999 rape offenses, and indicted him 17 years earlier. He contends that if the trial court had known this, it is likely that the trial court would have found that the state unjustifiably delayed in prosecuting the case.

{¶59} The state argues that the statutory provision requiring DNA collection from persons arrested for felonies applied only to persons arrested for felony offenses on or after July 1, 2011. Thacker's prior felony arrests were before 2011 and all were dismissed prior to trial. {¶60}   R.C. 2901.07(B)(1)(a)   requires   the   following   DNA collection:

> On and after July 1, 2011, a person who is eighteen years of age or older and who is arrested on or after July 1, 2011, for a felony offense shall submit to a DNA specimen collection procedure administered by the head of the arresting law enforcement agency. The head of the arresting law enforcement agency shall cause the DNA specimen to be collected from the person during the intake process at the jail, community-based correctional facility, detention facility, or law enforcement agency office or station to which the arrested person is taken after the arrest. * * *.

This provision was added to R.C. 2901.07 by 2010 Sub. S.B. 77, effective July 6, 2010, and requires the state to collect DNA specimens from persons arrested on or after July 1, 2011 for a felony offense. Thus, the state correctly argues that it had no statutory right under this provision to collect DNA specimens from Thacker prior to July 1, 2011. Thacker's trial counsel's performance was not deficient for failing to highlight Thacker's prior felony arrests in support of his motion to dismiss on speedy trial grounds.

{¶61} Moreover, we have already determined that because Thacker failed to prove actual prejudice from the state's preindictment delay, the justification, or lack thereof, for the state's delay is not relevant; it does not matter whether the state should have obtained Thacker's DNA specimen earlier. Thus, aside from whether his trial counsel's

performance was deficient for failing to bring up Thacker's prior felony arrests, Thacker's defense was not prejudiced.

## 2. Failure to Object to Leading Questions

{¶62} Thacker contends that his trial counsel was deficient for failing to object to the prosecutor's leading questions of A.S. on redirect concerning the penetration element of the rape offense.

{¶63} Evid.R. 611(C) states in part that, "Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony." Evid.R. 611(C) does not preclude the use of leading questions on direct examination; instead, the rule provides that "it is within the trial court's discretion to allow leading questions on direct examination." *State v. Jackson,* 92 Ohio St.3d 436, 449, 751 N.E.2d 946 (2001). Consequently, the Supreme Court of Ohio had held that the failure to object to leading questions does not constitute ineffective assistance of counsel. *Id.; State v. Stairhime,* 3d Dist. Defiance No. 4–13–06, 2014–Ohio–1791, ¶ 46 ("we cannot find that any failure to object to any leading questions would rise to the level of ineffective assistance of counsel"); *State v. Williams*, 4th Dist. Jackson No. 15CA3, 2016-Ohio-733, ¶ 34.

{¶64} If Thacker's trial counsel had objected to the leading questions he contests on appeal and the trial court had sustained the objections, it is likely that the state would have elicited the same testimonial evidence from A.S. by further questioning. And, even without A.S.'s testimony, the state established the penetration element of the rape offenses with the testimony of the treating physician who testified that the sexual assault involved penetration due to the presence of the hymen injury and with the testimony of the DNA experts who testified about the presence of Thacker's sperm on swabs from A.S.'s vagina and rectum.

{¶65} Other courts similarly find no deficiency with defense counsel's failure to object to the prosecutor's leading questions of a state witness on direct:

> Because a trial court has broad discretion in allowing leading questions, counsel's decision not to object is within the realm of trial strategy. *Id.* Thus, an appellate court "need not second-guess the decision of appellant's defense counsel to not object to leading questions." *Id.,* see also *State v. Jackson,* 92 Ohio St.3d 436, 449, 751 N.E.2d 946 (2001) (declining to find ineffective assistance of counsel

24

from an attorney's failure to object to the state's excessive leading questioning).

Review of the record reveals that counsel did not object to many of the leading questions posed by the state; however, we cannot say that counsel's failure to do so was not a strategic or tactical decision. Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if a better strategy had been available. *State v. Phillips*, 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995). Furthermore, as for any of the leading questions, the state could have simply rephrased them. *Edwards* at ¶ 17. Thus, we cannot find that an objection to this testimony would have had a reasonable probability of success.

*State v. Jones*, 2019-Ohio-2134, 137 N.E.3d 661, ¶ 59-60 (10th Dist.).

{¶66} An attorney's decision as to whether to object at certain times during trial is presumptively considered a trial tactic or strategy that we will not disturb. *State v. Fisk,* 9th Dist. Summit No. 21196, 2003-Ohio-3149, ¶ 9; *State v. Phillips*, 74 Ohio St.3d 72, 85, 656 N.E.2d 643, (1995). "Because 'objections tend to disrupt the flow of a trial, [and] are considered technical and bothersome by the factfinder * * * competent counsel may reasonably hesitate to object in the jury's presence.' " (Citation omitted.) *State v. Mickens,* 10th Dist. Franklin No. 08AP–626, 2009-Ohio-1973, ¶ 29, quoting *State v. Campbell,* 69 Ohio St.3d 38, 53, 630 N.E.2d 339 (1994); *State v. Blair*, 2016-Ohio-2872, 63 N.E.3d 798, ¶ 108 (4th Dist.).

{¶67} We find that trial counsel's failure to object to the state's leading questions was trial strategy and was not deficient. We overrule Thacker's fourth assignment of error.

*State v. Thacker, supra.*

Of Thacker's five sub-claims of ineffective assistance of trial counsel, only the first – failure to bring forward prior felony arrests – was presented on direct appeal. In deciding that sub-claim, the Fourth District reasonably applied the controlling Supreme Court precedent, *Strickland v. Washington,* 466 U.S. 668 (1984). Its decision on that sub-claim of ineffective assistance of trial counsel is therefore entitled to deference under 28 U.S.C. § 2254(d)(1).

25

Thacker's other four sub-claims were never presented to the Ohio courts.  On that basis, Respondent asserts they are procedurally defaulted.  Thacker recognizes how procedural default operates in Ohio, writing:

> In Ohio, claims must be raised on direct appeal, if possible, or res judicata bars their litigation in subsequent proceedings. *McGuire v. Warden, Chillicothe Corr. Inst.,* 738 F.3d 741, 751 (6th Cir. 2013) (citing *State v. Perry,* 10 Ohio St. 2d 175, 226 N.E.2d 104, 108 (Ohio 1967)). Therefore, a petitioner is not entitled to raise claims in post-conviction proceedings that could have been raised on direct appeal. *Engle* at 125 n.28. [*Engle v. Isaac*, 456 U.S. 107 (1982)].

Response, ECF No. 27, PageID 1006.  But then Thacker spends many pages explaining how actual innocence can excuse a procedural default. *Id.* at PageID 1006-12.  Confusingly, he concludes that his "multiple ineffective assistance claims alone should be considered in order to determine a fundamental miscarriage of justice would occur if the case were not remanded." *Id.* at PageID 1011.

This argument confuses ineffective assistance as an excuse for procedural default and actual innocence as an excuse.  Ineffective assistance can only act as excusing cause when that claim is not itself procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446 (2000).  Here one of Thacker's ineffective assistance of trial counsel claims is without merit and the other four are themselves procedurally defaulted.

The controlling precedent on actual innocence is now the Supreme Court's decision in *McQuiggin v. Perkins*, 569 U.S. 383 (2013).

> [A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have

26

voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U. S., at 329, 115 S. Ct. 851, 130 L. Ed. 2d 808; see *House*, 547 U. S., at 538, 126 S. Ct. 2064, 165 L. Ed. 2d. 1 (emphasizing that the *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U. S., at 332, 115 S. Ct. 851, 130 L. Ed. 2d. 808.

\* \* \*

[A] federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown.

*McQuiggin v. Perkins*, 569 U.S. 383, 386-87 (2013).

In *Souter v. Jones,* 395 F.3d 577 (6th Cir. 2005), the Sixth Circuit held:

[I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup v. Delo,* 513 U.S. 298, 316 (1995)." Thus, the threshold inquiry is whether "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 140 L. Ed. 2d 828, 118 S. Ct. 1604 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321.

*Souter v. Jones,* 395 F.3d 577, 590 (6th Cir. 2005). Thacker has presented no new evidence of the sort contemplated by *Schlup* and *Souter* that was not considered by the trial jury and that shows him to be actually innocent.

In sum, Thacker's first sub-claim of ineffective assistance of trial counsel is without merit and his four remaining sub-claims are procedurally defaulted. His ineffective assistance of trial counsel claim should therefore be dismissed with prejudice.

**Ground Five: Non-Compliance with Ohio Crim. R. 16(K)**

In his Fifth Ground for Relief in his Amended Complaint, Thacker asserts the State did not comply with Ohio R. Crim. P. 16(K) regarding testifying experts. This claim sets forth an error of Ohio law alone and therefore is not cognizable in habeas corpus. Our review is limited to claims of violation of the United States Constitution. Ground Five should be dismissed.

**Ground Six: Inadmissibility of DNA Evidence**

In his Sixth Ground for Relief, Thacker claims the State's DNA evidence was improperly admitted because of chain of custody issues. Like Ground Five, this claim raises only issues of state law and should be dismissed as non-cognizable.

**Ground Seven: Prosecutorial Misconduct**

In his Seventh Ground for Relief in the Amended Complaint, Thacker claims he was denied due process by the acts of prosecutorial misconduct. This claim is barred by Thacker's procedural default in never presenting it to the Ohio courts.

**Ground Eight:  Denial of Fair Trial:  Unkempt Appearance Before the Jury**

In his Eighth Ground for Relief, Thacker claims he was denied a fair trial by being brought before the jury without a shower and a shave.  The Magistrate Judge seriously doubts this claim is cognizable.  While it compromises the presumption of innocence when a defendant appears in shackles, the Court is unaware of any Supreme Court precedent requiring a recent shower and that a defendant be clean shaven.  In any event this claim is procedurally defaulted by Thacker's failure to present it to the Ohio courts.

**Ground Nine:  Cumulative Error**

In his Ninth Ground for Relief, Thacker claims that the accumulation of errors at trial denied him a fair trial.  This claim is not cognizable in habeas corpus.  "We have held that, post-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief."  *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005), *cert. denied,* 549 U.S. 1027 (2006), *citing Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002); *Lorraine v. Coyle*, 291 F.3d 416 (6th Cir. 2002).  Cumulative error claims are not cognizable because the Supreme Court has not spoken on the issue.  *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006), *citing Moore v. Parker*, 425 F.3d 250, 256 (6th Cir.  2005), *cert. denied,* 549 U.S. 1027 (2006).

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends this case

be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

September 5, 2023.

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #

s/ *Michael R. Merz*
United States Magistrate Judge